## C. W. HUBOTTER V. THE STATE.

1—In the conduct of public trials, a large discretion must be accorded to courts of original jurisdiction; and unless that discretion has been wan_ tonly or most unwisely exercised, an appellate tribunal will not interpose to control it.

2—After the district attorney had accepted the panel, the court below allowed him to challenge one of the jurors. *Held,* that there is nothing in the Code of Criminal Procedure which prohibits such action by the court below; and where nothing appears in the record to the contrary, this court will regard it as the exercise of a sound and wise discretion, not revisable by this court.

3—An indictment under Article 2410, Paschal's Digest, as amended by the act of November 12th, 1866, for the theft of "two beeves, the same being cattle, each of the value of fifteen dollars," is sufficiently certain in its descriptive averments of the property stolen.

4—See the opinion of the court for a critical analysis and definition of the term "cattle," as used in the above mentioned enactments.

5—The court below permitted the district attorney to prove what the value of the stolen property was in United States currency, such proof being objected to on the ground that no particular kind of money should be de signated. *Held,* not to be error which this court would revise.

APPEAL from Harris. Tried below before the Hon. W. R. Fayle, Judge of the Criminal Court of the county of Harris.

In the Criminal Court of the county of Harris, at a special term held in August, 1869, the appellant was indicted and tried for theft.

The indictment charged that the accused, "on the 13th day of August, A. D. 1869, in the said county of Harris and State of Texas, did then and there fraudulently and feloniously steal, take and carry away, from the possession of Samuel W. Allen, two beeves, the same being cattle, each of the value of fifteen dollars, without the consent of the owner, and with the intent then and there to deprive the owner of the value thereof, and to appropriate the same to the use and benefit of him the said C. W. Hubotter," etc.

The defendant pleaded not guilty. By a bill of exception taken by his counsel, it appears that "the district attorney having accepted the entire jury, the defendant examining each juror on his *voir dire*, when Mr. Henry Dupperman was called, examined and accepted by the defendant, whereupon the district attorney challenged him peremptorily, after having accepted him as a member of the panel, and the court set the said juror aside, and the defendant excepted," etc.

To which was appended by the judge the following : · "The above does not cover the entire case. After the district attorney had passed upon the entire panel, at the request of the counsel for the State and the defense, the jury box was vacated and the examination recommenced upon each juror individually, upon their *voir dire* by the defense."

The other facts, so far as of any consequence, are indicated in the opinion of the court.

The accused was convicted, and his sentence fixed at two years in the penitentiary.

His counsel moved for a new trial, and in arrest of judgment assigning, among other causes, that the indictment was insufficient for want of proper description of the property alleged to have been stolen.

Both motions being overruled, the accused appealed.

*Henderson & Whitfield*, for the appellant.—The second ground for arrest of judgment is as follows :

" The charge is stealing two beeves. Beef is a generic term, and has reference to all quadrupeds of the bovine race. The indictment should charge particularly the description, or by appropriate name and gender."

The third is as follows :

" The qualification ' being cattle.' The word cattle in said indictment embraces all quadrupeds, as also all personal property, and is therefore bad and not descriptive of what kind of property."

Beef is defined by Mr. Webster as " an animal of the bovine

genus, whether ox, bull or cow." The word therefore embraces the whole bovine race.

The qualification "being cattle," instead of describing the particular kind of beef taken, makes it still more complicated.

Cattle, Mr. Webster says, in the United States, in common usage, signifies only beasts of the bovine genus, oxen, bulls, cows and their young.

The indictment in this case is too vague, indefinite and uncertain; by the terms used the State could have convicted the defendant of theft of a bull, ox, cow or a calf. The indictment does not specify what kind of an animal was stolen. Mr. Justice Lindsay, in delivering the opinion of this court, at its last session, in case 3091, Charles Jordt v. The State, said:

"If the theft of a specific domestic animal was committed, it should have been correctly charged in the indictment."

The appellant in that case was indicted for the theft of a horse, and the proof was he had taken a gelding.

Mr. Justice Lindsay said, in referring to it: "A conviction for the theft of a horse upon the proof of taking a gelding, would be as incongruous as that of stealing a mule or an ass upon a similar indictment."

In the case under consideration the accused was convicted for the theft of two "beeves." Were they bulls, oxen, cows or calves? If the indictment is good, could the defendant plead this judgment in bar of another prosecution for the theft of two oxen belonging to S. L. Allen? If there was a felony committed it was the theft of two oxen.

In the case of Bush v. The Republic (1 Tex., 455), Justice Wheeler, in delivering the opinion of the court, said: "In an indictment for a statutory offense, the statute must be strictly pursued, and if the description of the offense embraced in the statute be departed from in any material respect, or if any ingredient in the definition of the offense be omitted, the indictment will be bad."

Again: "An indictment should allege the fact necessary to constitute the offense charged by averments, direct, positive

and certain, and not by way of argument and inference." (1 Tex., 455.)

The appellant was indicted under Art. 766 O. & W.'s Digest (Art. 2410 Pas. Dig.), which was amended November 12, 1866. (Gen. Laws 11th Leg., p. 200).

Art. 766, before being amended, read: "If any person shall steal any 'neat cattle,' sheep, goat or hog, he shall be punished by confinement in the penitentiary not less than two nor more than five years."

When amended, it was as follows: "If any person shall steal any cattle, sheep, goat or hog, he shall, if the value of the property stolen is twenty dollars or over, be punished by confinement in the penitentiary," etc.

The changes made in the law was, instead of "neat cattle," it expressed cattle only, and fixed the punishment according to the value.

The amendment does not cure the defect in the indictment. As before stated, the word "cattle" embraces every species of the bovine genus. The two beeves charged in the indictment may have been bulls or cows.

Justice Wheeler, in Burch v. The Republic, 1 Tex., 608, says: "It will generally be sufficient if the indictment follow the exact words of the statute in describing the offense, and it is never safe to depart from them. But where the statute uses a generic term it is not enough to employ *that term only;* but the pleader must also state the species according to the truth of the case." The same doctrine is laid down in Arch. Cr. Pl., p. 48.

Again Justice Wheeler said: "Where the statute, for instance, makes the malicious killing of cattle a felony, it is not enough in an indictment on the statute to charge the defendant with killing 'cattle' generally, but the particular species of cattle must be stated."

Does not the indictment in this case come within the reasoning of Justice Wheeler? Here the defendant, instead of being indicted for malicious killing "cattle," is charged with having

stolen " two beeves, the same being cattle." Two generic terms are used, neither of which separately would charge an offense; and combined, fail to charge an offense with that certainty required by law. (State v. West, 10 Tex., 553.)

*E. B. Turner*, Attorney General, for the State.

LINDSAY, J.—Neither the exception to the ruling of the court allowing the attorney for the State to challenge a juror after the panel had been accepted, nor to the permission to prove the value of the cattle in United States currency, can be regarded as an error which requires the revision of this court. In the conduct of public trials, for the attainment of the ends of justice there must be a large discretion accorded to tribunals of original jurisdiction; and unless that discretion is most unwisely or wantonly exercised, an appellate court would transcend its authority to attempt to control it. The object of the investigation is to secure a fair and impartial trial; and if, at any time in its progress, either party should discover that a juror is in the box who is incompetent to try the cause, no reason can be perceived why, at the instance of either party, the progress of the cause may not be arrested, and a competent juror substituted in his place. Nothing in the Criminal Code forbids it, and the demands of justice most obviously require it. In the case of Hanks v. The State of Texas, 21 Texas, 526, it is held if a juror who sat upon the trial had prejudged the case, and the fact was not known till after the trial—and, of course, not known at the time of his acceptance as a juror—it was good cause for a new trial. Unless, therefore, the right of challenge by the State had been exhausted at the time of the discovery of the obnoxious juror in the box, it can be regarded in no other light than the exercise of a sound and wise discretion by the court to allow the challenge to be made, and the substitution of an unexceptionable juror in his place.

This indictment was founded upon Article 2410, as amended by the act of the 12th of November, 1866. Its language is,

" if any person shall steal any ' neat ' cattle, sheep, goat or hog, he shall be punished by confinement in the penitentiary not less than two, nor more than five years." The amendment omits the word " neat " in the article. The obvious purpose of the Legislature was to leave the word " cattle " in the act, with its popular and well understood acceptation. The word, originally, certainly had a more extensive and comprehensive meaning than it now has in the American States. It has still a more extended signification in English parlance; and to give the term the restricted meaning which it only possesses in general American phraseology, the Englishman still uses some qualifying adjective, such as *black* or *neat* cattle. The popular signification of the word in this country, however, is well understood, without particularity of definition. Manifestly, in its popular, as well as in the sense in which the Legislature uses it in the amendment, it means a *species* of animals having an essential identity in qualities, to be taken and considered either collectively or individually : just as sheep, hogs or goats, with which it is associated in the act, and is thus contradistinguished from other *species* of animals which are scientifically arranged under the *generic* term " cattle." No one would pretend that in indicting a felon for stealing a sheep, a goat or a hog, it would be necessary to aver that the animal was a buck or ewe, a boar or a sow. The difference in relation to a horse or a gelding, an ass or a mule, results alone from the discrimination made by the Legislature itself, in Article 2409, Paschal's Digest.

The court is of opinion, therefore, that the indictment is good under the law; that the charge is sustained by the proof, and that there was no ruling by the court on the trial which could prejudice the legal rights of the party convict.

Wherefore, the judgment is affirmed.

Affirmed.