## DAVID P. BAKER *v.* THE STATE

1. SPECIAL VENIRE — CHALLENGE. — Article 556 of the Code of Criminal Procedure (Pasc. Dig., art. 3024) implies that, after a juror from a special *venire* has been accepted by both parties, a peremptory challenge to him is not allowable in this state, even by leave of the court.

2. SAME. — And, though a case may occur in which a challenge for cause may be allowable after the acceptance of a juror, the cause must be something which has arisen since the opportunity for challenge, or be one not ordinarily discoverable on the *voir dire* of the juror; and the application for leave to challenge at this stage of the proceedings should disclose such cause.

3. CASE STATED. — After a jury in a murder case had been accepted by both parties, the prosecuting attorney was allowed by the court, despite objection by the accused, to challenge certain of the jurors without assigning any cause for challenge except that, on a suggestion of his associate counsel, he had accepted them by mistake   *Held*, error.

4. CASES OVERRULED. — *Hubotter* v. *The State*, 32 Texas, 479, and *Cooley* v. *The State*, 38 Texas, 638, so far as they conflict with the foregoing rulings, are overruled

APPEAL from the District Court of Caldwell.   Tried below before the Hon. J. P. WHITE.

So far as the rulings of this court are concerned, the facts of this case are clearly stated in its opinion.   The statement of facts is voluminous, the witnesses numerous, and the testimony conflicting in some important respects ; and, as

the case stands for trial again, an attempt to detail the evidence is not deemed advisable.

*James H. Burts*, for the appellant, filed an able and exhaustive brief.

*George McCormick*, Assistant Attorney General, for the State.

WINKLER, J.   At the April term, 1874, of the District Court of Caldwell County, the appellant was indicted for the murder of F. Augustus Ellison, alleged to have been committed in the county of Caldwell, on January 16, 1869. At the January term, 1875, a trial was had, which resulted in a conviction of murder in the second degree, the punishment being assessed at confinement in the state penitentiary for a period of eight years.

Motions for a new trial and in arrest of judgment were made and overruled, and from the judgment this appeal is prosecuted.

During the process of forming the jury before whom the trial was had, a controversy arose as to the right of challenge, the particulars of which are set out in the following bill of exceptions:

"That on the trial of this cause — the state, by the district attorney, having accepted the last juror called into the box — there being a full panel, the defendant was called upon to pass upon the jury, and accepted the same; whereupon the court ordered the jury to be sworn. Before they were sworn the district attorney stated to the court that, from a suggestion from one of his associates, he had passed upon one of the jurors through mistake, and asked leave of the court to challenge one of the jurors — to wit, Anthony Wright — to which the defendant objected be-

cause he had accepted the panel; whereupon the court overruled the defendant's objection, and permitted the district attorney to challenge the juror. Other jurors being called, the challenge was continued until the district attorney had taken off the jurors J. C. Stroud and John Anderson, both of whom were on the jury when it was first accepted by defendant. This the court permitted until the jury was made up and accepted by both the state and defendant, before the special *venire* in the case was exhausted, and before either party had exhausted their peremptory challenges."·

The ruling complained of in this bill of exceptions forms one of the grounds of the motion for a new trial, and is assigned as error:

It is contended on the part of the appellant that, after the panel of jurors had been completed and accepted by both parties, then neither the court nor the counsel had any further control over the subject, and that it was error to allow the challenge as stated after that stage of preparation had been reached; whilst it is maintained on the part of the state that it was not too late, and that any juror was subject to challenge at any stage of the proceeding until the jury were sworn.

The two sides of the question have each been maintained with zeal and ability, and each in his turn has referred us to numerous decisions of our own and other states in support of his side of the matter in issue. In the examination of the decisions of other states, however, we have found that in a majority of instances the rulings have been made with reference to local practice or based upon local statutes, as must necessarily be the case in questions of practice to a great degree; and have not been referred to, nor have we in the time allowed been able to find, any adjudicated case or line of decisions in other states which would afford a safe rule, and supported upon sufficient authority to have a

controlling influence over the subject, independent of our own statutes and our own decisions. In support of this view it may not be amiss to notice some of the cases referred to.

In *Jackson* v. *Pitts*, 8 Blackf. 194, it was held that the plaintiff had a right to challenge a juror "at any time before the jury was sworn." This decision is upon the authority of *Beauchamp* v. *The State*, 6 Blackf. 299, and *Manly* v. *The State*, 7 Blackf. 593. On examination we find that *Beauchamp* v. *The State*, 6 Blackf., is on authority of *Wiley* v. *The State*, 4 Blackf. 495. And, in examining *Wiley* v. *The State*, we find it is based upon the construction of two sections of the Revised Code of 1831, to which we have not had access; but enough is seen to show that the series of cases rests, in part at least, upon a local statute, but whether similar to our own or not we are not advised.

Take, again, the case of *The State* v. *Cameron*, 2 Chand. 172. Here one of the circuit judges had certified a number of questions to the court for its opinion. We make an extract from the opinion: "The judge further reports that before the jury had been sworn, but after they had been accepted by the counsel for the prosecution and by the defendant, the defendant asked leave to challenge peremptorily a juror, he not having challenged the number allowed him by statute. This the court refused to permit him to do. A majority of this court think that this ruling was correct. The cases cited by counsel show that in two of the states the practice is not to allow a defendant in a criminal prosecution to challenge a juror peremptorily after he had been accepted." In this case the court say: "An examination of the authorities shows that the practice is different in different states, and has not been uniform in the same courts."

This case, whilst the opinion of the majority of the court seems to be clear and to the point, loses much of its force

as authority here, not only from the fact that it is based upon a statute to which we have not had access, but from the additional fact that it was the opinion of a divided court, in which the chief justice did not concur on this point, and who supported his dissent by reference to the case of *The Commonwealth* v. *Hendricks*, 5 Leigh, which we have examined and find that it sustains the views of the chief justice. 5 Leigh, 707. In the latter case the subject is discussed somewhat, and the right to challenge a juror until sworn is strenuously maintained as settled practice in that state.

We have also been referred to the case of *The People* v. *Jenk*, 24 Cal. Here we find that the ruling was made "under section 341 of the Criminal Practice Act," which permits the defendant to "peremptorily challenge a juror at any time after his appearance in the box and before he is sworn to try the case."

In the case of *The State* v. *Potter*, 18 Conn. 176, we find something seeming to have some analogy to our own practice. We quote: "But it is said that by the English practice the party has a right to challenge until the juror is sworn. There each juror is sworn as soon as he has been examined and opportunity given for challenge. By our practice the jurors are none of them sworn until all have been examined and opportunity offered for challenge. Here, where one has been examined and opportunity to challenge given, he is directed to take his seat as a juror, just as in England after he has been sworn ; and the delay in swearing him is not to give any privilege to the prisoner which he could not claim elsewhere, but to prevent multiplying oaths, and to save the delay incident to the administration of the oath twelve times instead of once." And the judge concludes that "the effect of the practice in both cases is the same. In the one case his opportunity is closed when the juror is sworn ; in the other case, when he is directed to take his seat."

We have pursued this inquiry sufficiently far to illustrate the great difficulty, if not the utter impracticability, of deducing a rule of practice from the decisions of other courts unless we had access to the different statutes and rules of practice as they obtain in the different localities.   Instead of attempting to do so, we prefer to look to our own laws and to the decisions of our own courts of last resort, in the belief that here we may find a more satisfactory solution of the question, and a guide for ourselves in the future.

In Texas, whilst we have for many years had the same unaltered provisions of the Code of Criminal Procedure, still our court of last resort has not maintained uniformity of interpretation and application of the article of the Code involved; and in the present case we are referred, by the representative of the state, to the line of decisions obtaining at one period, in support of his side of the argument, whilst the appellant's counsel relies upon at least one decision, at another period, to sustain the position maintained by him, that the right of challenge ceases when the panel has been completed and the jury has been accepted by both the state and the accused.   It should also be observed that the judge who presided at the trial made his ruling at a time when the former decisions of our Supreme Court were the last exposition of the law on the subject, and that the ruling complained of was in conformity to the doctrines then, and for some time previously, held by the highest judicial authority in the state; and, consequently, no blame can attach to his ruling.   If later rulings have established a different practice, this is something he could not reasonably have been expected to anticipate.   But to the subject under consideration.

In *Hubotter* v. *The State*, 32 Texas, 479, Mr. Justice Lindsay, in delivering the opinion of the court, and speaking of the discretion of the courts, in the trial of a case, over the subject of challenge, says: " In the conduct of public trials,

for the attainment of the ends of justice there must be a large discretion accorded to tribunals of original jurisdiction; and, unless that discretion is most unwisely or wantonly exercised, an appellate court would transcend its authority to attempt to control it." This decision seems to have been based on the case of *Hanks* v. *The State*, 21 Texas, 526.

In Hanks' case a juror named Boze, who sat upon the jury, said to the person upon whom Hanks was accused of having made an assault: " Your name is Pelham, is it not? I don't know you, but I am well acquainted with your case, and I will be on the jury, and will do all I can for you;" and the court held that he had prejudged the case, and granted a new trial. But it is not seen that Hanks' case supports Hubotter's case. In the latter case it does not appear that any cause was given for the challenge.

We are of the opinion that a case might arise where a challenge ought to be allowed after the juror has been accepted, but the cause should be something arising subsequently to the time allowed for the challenge, or that would not ordinarily be discovered by the examination allowed on *voir dire*. In the present case no reason was given for permitting the challenge at an irregular time.

In *Cooley* v. *The State*, 38 Texas, 636, Mr. Justice Walker undertook the laudable purpose of settling all conflict in the practice of organizing juries, by laying down what he believed would be a proper plan of universal application in criminal trials. This decision was rendered in 1873, and was the leading case on the subject until August, 1875, when, by an amendment of the organic law, the court had been changed from three to five judges, and a new court organized, who gave another interpretation to the Code in relation to the organization of juries, in the opinion of the court, delivered by Chief Justice Roberts, in the case of *Horbach* v. *The State*, 43 Texas, 242; since the

delivery of which the rule laid down in Cooley's case has not been followed, and Horbach's case has been, and still is, the leading case on the subject. This court, since its organization, has always had a proper regard for harmony of decisions, and has almost uniformly followed the decisions of the Supreme Court when that tribunal has settled the law by adjudication; and, when the decisions have not been harmonious, we follow the latest cases.

In Horbach's case the court placed the proper construction on article 556 of the Code of Criminal Procedure, which is as follows: "In forming the jury, the names of the persons summoned shall be called in the order they stand upon the list, and, if present, shall be tried as to their qualifications, and, unless challenged, shall be impaneled." This clearly indicates that each person is to be examined separately, and subject to challenge, either for cause or peremptorily, separately, and that these things are to be done *before* the person is impaneled; and that to challenge afterwards would not be allowed except for some cause not discoverable on the examination of the person, and to be set out in the application for leave to make the challenge. This rule has been followed by this court in Taylor's case, decided at Tyler in 1877, and in Wasson's case, decided at the present term, and will be adhered to in the future. [For the cases here cited see *ante*, pages 169 and 474.]

The view we have taken of the case renders it unnecessary to notice specially any of the other errors assigned. It may not be amiss, however, to say that they do not seem to be well taken. The indictment and the charge of the court are not liable to objection. But, for the reason first above mentioned, the judgment is reversed and the cause remanded.[1]

*Reversed and remanded.*

[1] White, J., does not sit in this case.