[No. 1252. Decided November 12, 1894.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN BROOKHOUSE, *Appellant*.

LARCENY OF NEAT CATTLE—INFORMATION—INSTRUCTIONS.

The association of the word " feloniously," with the words "steal, take and carry, lead or drive away" in the statute defining grand

larceny makes each phrase synonymous with the others, and the use of the disjunctive "or" in an information charging that crime does not render the pleading bad.

In a prosecution for a theft of a certain number of steers or neat cattle, an information describing the property taken as so many "head of cattle" is defective under § 52 Penal Code, since the term "cattle" includes all the domestic animals mentioned in that section. (HOYT and SCOTT, JJ., dissent.)

In a prosecution for stealing cattle in which the only evidence on the part of the state tended to show that the accused had participated in the driving of the cattle a distance of forty miles from the place of stealing, while the evidence on the part of the accused was that he had been elsewhere at the time of the asportation, so that he could not have participated in the drive, it was error for the court to charge the jury that if they found that the accused was not present at the time the cattle were driven away, but was present at the time of starting the drive, under an agreement that he should share in the proceeds of the cattle driven away and sold, they should find him guilty.

*Appeal from Superior Court, Douglas County.*

*R. W. Starr* and *Gilliam & Hill*, for appellant.

*George Bradley*, Prosecuting Attorney, *Hyde & Reagan* and *James A. Haight*, for the State.

The opinion of the court was delivered by

STILES, J.—The prosecution of the appellant was based upon an information containing the following charge :

"The said John Brookhouse, at the county and state aforesaid, on, to-wit : the 28th day of June, 1893, did then and there feloniously take, steal, drive or lead away, twenty-five head of cattle, being then and there the property of E. D. Nash, and being then and there of the value of seven hundred dollars."

The theory of the state was that this was a charge of grand larceny under Penal Code, § 48, and the jury was so instructed by the court. We do not think the use of the disjunctive "or" rendered the pleading bad in this instance, because the association of the word "feloniously" with the words "steal, take and carry, lead or drive away" in the

statute makes each of the phrases synonymous with the others. *People v. Tomlinson*, 35 Cal. 503.

But the information was defective because the property alleged to have been taken was described only as "cattle." The term cattle in law includes all of the domestic animals mentioned in Penal Code, § 52, so that the information would have been sustained by proof of the taking of twenty-five horses as well as by showing that the "cattle" were that number of "steers." Anderson, Law Dict., "cattle;" Bishop, Stat. Crimes, §§ 212, 440; 1 Bishop, Crim. Proc., § 568; *United States v. Mattock*, 2 Sawy. 148; *Ohio, etc. R. R. Co. v. Brubaker*, 47 Ill. 462; *State v. Hambleton*, 22 Mo. 452; *State v. Lawn*, 80 Mo. 241; *State v. Enslow*, 10 Iowa, 115.

With so plain a statute as Penal Code, § 52, in the criminal code, it is a proper subject for surprise that a prosecution for the stealing of property of this kind should not be pursued under its provisions.

The evidence for the state in this case consisted wholly of the testimony of a person who admitted that he himself, on the evening of the 27th of June, 1893, gathered up the steers, and the same night and the following morning drove them some forty miles down the Columbia river. He testified that some days before the 27th, appellant, himself and another man named Harris planned the theft of the steers, and that appellant and Harris were with him and assisted him in gathering and driving them away, and that they did not separate until the afternoon of the 28th, when they had returned together from the point where the cattle were left. Appellant attempted to prove by witnesses that he was not away from his home near Waterville on the 27th and 28th days of June, at any time of the day or night long enough to have taken an 80 mile ride during half of which he was employed in driving a herd of cattle. If the jury had believed the testimony offered they could not have believed the state's witness wherein he persisted that appellant had been with him on the entire expedition, and finding him thus discredited, it is incredible that any part of his tes-

timony inculpating the appellant should have been accepted as true beyond a reasonable doubt.

Under this condition of the evidence it was manifest error for the court to tell the jury that if they found that appellant was not present at the time the cattle were driven away but was present at the time of starting the drive, under an agreement with the prosecuting witness that the cattle should be driven away and sold, and that he should have a share of the proceeds, they should find him guilty. No such state of facts as that pre-supposed in this charge had been testified to, unless the most material portion of the prosecuting witness' statement were rejected as false and perjured. But by thus reducing the time of appellant's presence to the mere starting of the drive, the court opened the way for the jury to admit the truth of all the testimony for the defense, and yet find the accused guilty; for it was not pretended but that appellant might have been present during the few hours necessary to start the drive, so far as the knowledge of his witnesses went. These witnesses testified that they were with him at Waterville and in the vicinity on the evening of the 27th and again on the morning of the 28th, but they could not say where he was during the intervening night. Other witnesses claimed to have seen the cattle on the road down the Columbia, driven by but one person, who was riding a horse of the same description as one owned by the prosecuting witness. The nature of the evidence produced by the state to sustain its charge being of the character described, and furnished by a single confessed accomplice, it was unfair to the appellant to call upon him to account for himself in answer to a state of facts entirely different to those testified to against him.

We are of the opinion that the judgment should be reversed and the information set aside; but the appellant will not be discharged, but held to await the further action of the Superior court in his case, within the time allowed by law.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT, J. (*dissenting*).—I am compelled to dissent from

the foregoing opinion. First, as to the information: The majority hold it bad because the property is described as so many head of "cattle" instead of "neat cattle." That technical accuracy would authorize such a distinction as is made by the majority of the court, there can be little doubt, but technical accuracy, if ever required to the extent suggested, is made unnecessary by the provisions of our statute, which provide substantially that an information will be sufficient if a man of common understanding can ascertain therefrom the offense with which he is charged. And this rule applied to the clause of the information under consideration will establish its sufficiency. There is no doubt that the word "cattle" is broad enough when used alone, under some circumstances, to cover other classes of animals than "neat cattle," but it does not follow that by its use the clause is made uncertain to a man of common understanding. In my opinion, one charged with stealing "cattle" would understand as perfectly the nature of the property which he was charged with having taken as he would if, in the complaint or information, the property had been described as "neat cattle." To the common understanding the word "cattle" as ordinarily used has no such broad significance as claimed by the majority of the court. When the context shows that in the use of the word reference is had to some particular class of animals, as distinguished from the whole class to which the word might in some cases apply, everybody will understand from such use that it is that class of animals technically known as neat cattle which is meant, and that thereby it is not intended in any sense to cover horses, or other classes of animals sometimes included in the term "cattle."

Such a technical construction of words used as is suggested by the majority of the court may have been necessary at one time in order to protect the rights of the accused, but if there ever was such a time it has long since passed. At this time the accused comes into court sure of the assistance of the intelligence of some person trained in the law, and his ability to interpret the words of the charge against him

should, in justice to himself and the public, be determined in the light of the ability to comprehend not only of himself but also of counsel of whose assistance he is assured by the constitution and laws. I do not see how it could have been possible for the defendant to have been misled or in any way injured by the omission of the word "neat" before "cattle" in the information filed against him, and if he could not have been, then under our statute the information was sufficient.

Upon the merits of the case as it was presented to the jury I have only this to say : The proofs seem to have been fairly presented, and the charge of the court contained no substantial error; from which it follows, under well established general rules, that the verdict rendered should not be disturbed by the appellate court. And I am inclined to the opinion that even if there had been no corroboration whatever of the testimony of the complaining witness, the relations of this court to the verdict would not be changed, and that the judgment and sentence rendered thereon should be affirmed and the verdict sustained by such testimony alone, unless it appeared therefrom that it was unwarranted.

But it is not necessary to go so far as this to sustain the conviction of the accused in the case at bar, since there was proof introduced which substantially corroborated the testimony of the complaining witness. I can find nothing in the record which indicates that the appellant did not have a fair trial, and I find proofs therein which to my mind abundantly support the verdict of the jury.

SCOTT, J., concurs.