# Gunter v. The State.

*Indictment for Assault with Intent to Murder.*

1. *Former acquittal or conviction; offenses resulting from one act.*—A defendant can not be lawfully punished for two distinct offenses growing out of the same identical act, where one is a necessary ingredient of the other, and a conviction or acquittal of one offense may be pleaded in bar of a prosecution for the other offense resulting from the same act; but the same person may, as a part of the same transaction, commit two or more criminal ·offenses, and an acquittal or conviction of one will not bar the prosecution for the others.

2. *Former acquittal; when sufficient to bar second prosecution.*—Where the same act of unlawful shooting results in the death of two persons, an acquittal on a trial for the murder of one of them bars a second prosecution for the killing of the other; but where one, in the same affray, shoots and kills one person, and by a second shot kills or wounds another, an acquittal on trial for killing the first person constitutes no bar to a prosecution for killing or assaulting the other.

3. *Same; sufficiency of plea.*—Where, to an indictment charging an assault with intent to murder, the defendant pleads a former acquittal under an indictment charging him with the murder of a different person, which killing and the assault charged constituted the same transaction and was done at the same time, the plea, to be sufficient to present the defense intended, must, by positive averment, allege with definiteness that there was but one act or blow which resulted in the offenses complained of; and mere legal conclusions of the pleader renders the plea demurrable.

4. *Assault with intent to murder; evidence as to whether shooting was accidental inadmissible.*—Where on a trial for assault with intent to murder, upon the person assaulted testifying that defendant shot him without cause or provocation and that they had always been friends, a question asked him by defendant's counsel as to whether the shooting was accidental, was properly disallowed, because it called for a conclusion of the witness.

5. *Same; evidence as to the age of the person assaulted admissible.*—On a trial for an assualt with intent to murder, the testimony of the person assaulted that at the time he was assaulted he was about 18 years

[Gunter v. The State.]

old, is relevant and admissible, as tending to show the relative conditions of the parties at the time of the commission of the offense.

6. *General objections to evidence unavailing.*—Objections to evidence, to be available, must specify the grounds thereof; and mere general objections are properly overruled, unless the evidence offered is patently inadmissible.

7. *Assault with intent to murder; evidence as to location of wound.*— Where, on a trial for an assault with intent to murder, the person assaulted testified that the defendant committed the assault upon him without cause or provocation, and that at the same time he committed the assault for which he was being tried, the defendant killed another person by shooting him in the back, while he was making no demonstration towards defendant, as corroborative of this testimony a witness who had examined the body of the deceased should be allowed to testify that there was a wound in deceased's back, and it is permissible for him to point out the location of the wound upon the back of any one standing up before the jury.

8. *Same; inadmissible evidence.*—On a trial for an assault with intent to murder one D., the testimony of a witness that several months before the commission of the offense charged he sold a knife to one B., who was killed by defendant in the same difficulty, in which the assault charged was committed, and had seen B. try to cut the defendant on one occasion, is wholly inadmissible.

9. *Same; evidence of defendant being waylaid was admissible.*—On a trial for an assault with intent to murder one D., where there is evidence that D. and one B., while on their way to defendant's store, armed with pistols, threatened to kill him, which threat was immediately communicated to defendant, and that on arriving at the store, after the exchange of a few remarks among themselves, B. fired at defendant, whereupon the latter shot and killed B., and wounded D., evidence that on the night before the difficulty, B. and D. waylaid the house where defendant lived is relevant and admissible, not only to show their motive in going to defendant's store, but as corroborative of their communicated threats, and to aid the jury in determining who was the aggressor in the difficulty.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. GEORGE E. BREWER.

The appellant was indicted, tried and convicted for an assault with intent to murder one Monroe Debtor, and sentenced to the penitentiary for six years.

The defendant interposed a plea of former acquittal, the averments of which are sufficiently set forth in the opinion. To this plea the State demurred on the grounds, 1st, that the plea shows on its face that the offense charged in the indictment was a different and distinct offense from the one alleged in the plea; and 2d, that

the defendant was tried for the murder of George Breazle, and was now on trial under an indictment for an assault with intent to murder.

The facts of the case pertaining to the rulings of the court upon the evidence which are reviewed on the present appeal, are sufficiently stated in the opinion.

INZER & WARD and J. E. BROWN, for appellant.

WM. C. FITTS, Attorney-General, for the State.—The question asked the witness Debtor as to whether the shooting was accidental, called for irrelevant and illegal testimony and was properly overruled. The utmost limit to which declarations about a shooting being accidental can be extended is found in the cases of *Jones v. State*, 103 Ala. 2; *Sanders v. State*, 105 Ala. 4. The action of the court in allowing a witness to describe accurately and even with minuteness where the bullet hole on the dead body of Breazle was located was free from any suspicion of error. The fact that the solicitor stood up and allowed the witness to illustrate by putting his finger on the body of the solicitor could work no harm. The mere fact that the person of the solicitor was used for this apt mode of illustration was no more injurious to the defendant than if the person of the judge or a juror or bystander had been used for the same illustration. When you ask a witness where a man was shot how can he swear it any better or more accurately, and, therefore, more impartially than by coming to you and putting his finger on the exact locality where the fatal blow was landed.—*McKee v. State*, 82 Ala. 32.

HARALSON, J.—1. It is the settled rule of this court, that a defendant cannot be lawfully punished for two distinct felonies, growing out of the same identical act, and where one is a necessary ingredient of the other; that a series of charges cannot be based upon the same offense, and subdivided into two or more indictable crimes. So, it has been held, that where the same act of unlawful shooting resulted in the death of two persons, an acquittal or conviction on the trial of one would be a good defense on a second trial for the alleged murder of the other, for the reason that the killing constituted but one crime, which could not be subdivided and

made the basis of two prosecutions.—*Clem v. The State,* 42 Ind. 420. And again, where one blow produces two separate assaults and batteries on two different persons, a conviction of one may be pleaded in bar to an indictment for the other, for the reason that the defendant cannot be punished for two distinct assaults growing out of the same identical act.—*State v. Damon,* 2 Tyler (Vt.) 387; *State v. Cooper,* 1 Green. (N. J.) 361. These cases and the principles announced, were referred to and approved in *Hurst v. The State,* 86 Ala. 604, where the same question was considered and decided by this court upon a careful review of many authorities. Hurst was indicted, tried and convicted for having introduced a file into the county jail, with the intent to facilitate the escape of a prisoner, confined on a charge of misdemeanor. At the same term of the court, defendant was indicted, tried and convicted, for the same act of conveying into the county jail the same file with which to facilitate the escape of another prisoner, confined on a charge of a felony, and it was held, on a plea of *autrefois convict,* that the first conviction was a bar to the indictment in the latter case.—*O'Brien v. The State,* 91 Ala. 25; *Moore v. The State,* 71 Ala. 307; *Gordon v. The State,* 71 Ala. 317.

It must not be overlooked, however, that the same individual may, at the time and in the same transaction commit two or more distinct criminal offenses, and the acquittal of one will not bar punishment for the other, as if in the same affray, one person shoots and kills one person, and by a second act shoots and wounds another. In such case, the two results, the killing of the one and the wounding of the other, by different acts of shooting, cannot be said to grow out of the same unlawful act, but out of two distinct acts, and the party shooting is responsible for the two results from the two separate acts, and may be indicted and punished separately for each. *The State v. Standifer,* 5 Port. 523; *Cheek v. The State,* 38 Ala. 231, and authorities *supra*.

The plea in this case sets up that the defendant was indicted for the murder of George Breazle, and that he was tried and acquitted therefor. Among other facts pleaded it is stated: "And the said defendant says, that he is in fact, that he was so indicted and acquitted as aforesaid, is one and the same person, and that the assault and murder of which he, the said Robert Gunter,

[Gunter v. The State.]

was so indicted and acquitted as aforesaid, and the assault with intent to commit murder of and for which defendant is now indicted are one and the same assault, and committed at one and the same time; that the killing of said Breazle took place under the same prosecution, and not other and different assaults, for other and different prosecutions, but that it was one transaction committed at one and the same time," &c. The above is a loose and very unskillful averment, if that was the intention, of the identity of the act by which the killing of the one and the wounding of the other person was effected. It speaks of two assaults, the death of one person following the one, and the wounding of another, following the other, and avers that they *are* one and the same assault  *   *   *   *   under one and the same prosecution, and not other and different assaults for other and different prosecutions, that it was one transaction, committed at one and the same time. This would seem to be the averment of a legal conclusion, rather than of a fact—an averment that the assaults were one, in the sense that for them different prosecutions could not be maintained. If there had been but one pistol shot fired by defendant, which struck two men, killing one and wounding the other, it would have been an easy matter to so aver, but there is an apparent cautious omission of such an averment, and to substitute for it the nearest approach that the pleader could make to it—an allegation of a conclusion, the main fact to be taken as a matter of inference, rather than from positive averment. Construing the plea most strongly against the pleader, we hold it was insufficient and subject to demurrer.

2. The party assaulted, Debtor, had testified that the defendant shot him without any cause or provocation, and that he and defendant had always been friends. Defendant's counsel then asked the witness: "Pistol must have gone off accidentally then?" This question was properly disallowed. It was a jeer, implying falsehood to the witness, and if answered would have been the mere conclusion of the witness, as would have been the answer to the next question, which the court ruled to be improper: "Will you tell the jury whether the shooting was accidental?"

There was no error in allowing the witness to state

[Gunter v. The State.]

that he was about eighteen years old at the time he was shot. This was a pertinent inquiry as tending to show the relative conditions of the parties at the time of the assault.—*Commonwealth v. Selfridge*, (Mass.) Cases of Self Defense, p. 3.

3. The witness, Thompson, for defense, had examined the body of Breazle, after he was shot. He was asked on cross-examination by the State's solicitor, to state where the wound was. The witness stated that he had a wound hole in his back, and pointed out on the back of the solicitor where the wound was on the deceased. The defendant objected to this evidence separately, but specified no grounds of objection. The objections were properly overruled for want of specific objections, and because the evidence tended to corroborate the evidence of Debtor, that Breazle was shot in the back, while making no demonstration against the defendant. The person of the solicitor, standing up, was an unobjectionable illustration, in locating on his back, where the wound was on the dead man.

4. The witness, Thompson, was also asked to state, "Whether or not about this time (August, 1891) George Breazle bought a knife, and if you heard him say what he was going to do with it?" He replied, "that he sold Breazle a knife, and saw him, Breazle, try to cut defendant." The State objected to the question and answer, and the court excluded the latter part of it as to witness having seen Breazle try to cut defendant with it. There was no error in excluding that part of the answer, as the whole of it was irrelevant, and the part excluded, even if a former difficulty had been relevant, went into the particulars of such difficulty. But what such a transaction as that called for, in August, 1891, between defendant and Breazle had to do with the difficulty between defendant and Debtor in December, 1891, does not appear and is difficult to conceive.

5. The witness for the defense, Steve Gunter, testified that defendant lived in his house and was at home the night before the killing took place. Defendant's counsel asked the witness to "State whether or not these men, Debtor and Breazle, waylaid your house the preceding night, and how you knew it?" The court, on the objection of the solicitor, excluded the evidence. The question called for a fact within the knowledge of the

witness.  Debtor had testified he was shot by defendant without cause or provocation, was unarmed and doing nothing at the time.  The evidence for the defense tended to show, that Breazle and Debtor, just before the killing, on their way to the store where it occurred, threatened to kill defendant, which threat was communicated to defendant immediately afterwards.  The evidence for the defense also tended to show, that both these parties, just after their threat to kill defendant, went to his store, armed with pistols, and stood in the side door, opposite to where defendant was standing; that Breazle said to Debtor, "If you are going to do that dancing, it is time you were at it," to which Debtor replied, "I am ready;" that Breazle presented the pistol at defendant and fired, after which defendant shot him, and then, immediately, shot Debtor.  Under these circumstances, we think the fact, if it were true, that these two men, the preceeding night, waylaid the house where defendant lived, was admissible on the several grounds, as tending to show their motive in going to defendant's store; was corroborative of their communicated threats to kill defendant, and to aid the jury in determining the question about which there was conflicting evidence, as to who was the aggressor.  The evidence stands, as to such matters and for such purposes, upon the same footing as threats whether communicated or not.—*Roberts v. The State*, 68 Ala. 156; *Clarke v. The State*, 78 Ala. 477; 3 Brick. Dig. 289, § 627.

For the error in excluding this evidence, the case must be reversed.

Reversed and remanded.