[No. 2328]

THE STATE OF NEVADA, EX REL. JOHN ESSER, PETITIONER, v. THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF NYE, AND THE HON. MARK R. AVERILL, JUDGE OF SAID COURT, RESPONDENTS.

[174 Pac. 1023]

1. LARCENY—CONSTRUCTION OF STATUTE—"CATTLE."
   Rev. Laws, 6640 (Crimes and Punishment Act, sec. 375), which defines the stealing of "cattle" as grand larceny, embraces cows, bulls, and steers of the domesticated bovine genus.

2. WORDS AND PHRASES—"BOVINE"—"NEAT CATTLE"—"CATTLE."
   The term "bovine" is taken from the Latin "bos," which means cow or bull. "Neat cattle" are animals belonging to the genus "bos," term not embracing horses, sheep, goats, or swine. "Cattle" as generally used in Western America or the western states means "neat cattle" straight-backed, domesticated animals of the bovine genus regardless of sex, and is not generally, but may be, taken to mean calves, or animals younger than yearlings. It includes cows, bulls, and steers, but not horses, mares, geldings, colts, mules, jacks, or jennies, goats, hogs, sheep, shoats, or pigs.

3. LARCENY—SUFFICIENCY OF INFORMATION—"CATTLE."
   Under Stats. 1913, c. 209, sec. 4, requiring charge to be clearly set forth, etc., an information, charging theft of "cattle," is not bad, the word "cattle," as used in Rev. Laws, 6440 (Crimes and Punishments Act, sec. 375), embracing cows, bulls, and steers of domesticated bovine genus.

4. CRIMINAL LAW—JUDICIAL NOTICE—REVISED LAWS OF STATE.
   Supreme court will take judicial cognizance of the publication of the Revised Laws of the state, compiled and published under the supervision of the code commission in which the crimes and punishments act, sec. 375 (Rev. Laws, 6640), appears.

5. WITNESSES—PRIVILEGE—TRIAL OF ACCOMPLICE.
   Under Rev. Laws, 7451, a person charged with larceny may refuse, on the ground of incrimination, to testify at the trial of an accomplice against whom a separate information has been filed.

6. CRIMINAL LAW—TRIAL OF ACCOMPLICE—VOLUNTARY TESTIMONY.
   Rev. Laws, 7451, providing that a person may be sworn as a witness against an accomplice, but that such testimony shall not be used against witness except on perjury charge, there is no rule precluding a witness from voluntarily testifying either for or against an accomplice, though called as witness by prosecuting attorney.

7. CRIMINAL LAW—PRELIMINARY HEARING—ACCOMPLICE—SEPARATE INFORMATIONS.

Where two persons are jointly charged with grand larceny by complaint filed in justice court, and after a joint hearing in in such court, at which evidence is taken, are held to answer to district court, they cannot complain upon the subsequent filing of separate informations against them that they were denied the right of preliminary hearing.

8. INDICTMENT AND INFORMATION—SEPARATE INDICTMENTS.

Where two persons are jointly charged with grand larceny in preliminary examination, and subsequent to such examination grand jury investigates charge, separate indictments may be filed against the parties.

9. CRIMINAL LAW—JOINT INDICTMENT—SEPARATE TRIALS.

Where two persons are jointly indicted of grand larceny after preliminary examination in which they were jointly charged with such crime, and after investigation by grand jury, they may, under the statute, demand separate trials which demand court would be required to grant.

ORIGINAL PROCEEDING in prohibition by the State of Nevada, on the relation of John Esser, against the District Court of the Fifth Judicial District of the State of Nevada, in and for Nye County, and Mark R. Averill, Judge of said court. Writ denied, and proceeding **dismissed.**

*Thomas & Ham, Charles E. Barrett,* and *C. L. Richards,* for Petitioner:

A writ of prohibition is the proper remedy. An appeal in a criminal case is not a plain, speedy or adequate remedy. Evans v. Willis, 22 Okl. 313; State v. Gay, 118 Pac. 830; Pearian v. Spiers, 10 Pac. 609; Terrell v. Superior Court, 60 Pac. 38; Arfsten v. Superior Court, 128 Pac. 949; Levy v. Wilson, 10 Pac. 272; Ex Parte Smith, 33 Nev. 466; In Re Waterman, 29 Nev. 298; Ex Parte Zany, 129 Pac. 295.

The district court has no jurisdiction to hear, try or determine the purported charge against the petitioner, because no preliminary hearing was held on the charge contained in the information, and the information is not accompanied by an affidavit of any person; because the information is based upon what purports to be section 6640 of the Revised Laws of Nevada of 1912, and such

section is not a valid law; and for the reason that the paper writing termed an information does not charge a crime under any law of the State of Nevada. Stats. 1913, p. 293; Const. Nev., art. 15, sec. 8; In Re Waterman, 29 Nev. 298.

An information charging the defendant with having stolen a number of "cattle" charges no crime. Mobley v. State, 57 Fla. 22. Where the statute describes more than one object or thing belonging to the same class or species, the indictment must be framed according to the particular facts, even though one of the descriptive terms, if taken in a generic sense, is sufficiently comprehensive to include all. Mobley v. State, supra; State v. McDonald, 10 Mont. 21; Brisco v. State, 4 Tex. App. 219.

The state, by calling the petitioner as a witness in the case of State v. May, granted petitioner amnesty, and cannot further prosecute him. It is provided in the constitution of Nevada (art. 1, sec. 8) that a defendant shall not be compelled in any criminal case to be a witness against himself. This constitutional provision is the same as the fifth amendment to the constitution of the United States. Brown v. Walker, 40 L. Ed. 819; Counselman v. Hitchcock, 142 U. S. 547; Boon v. People, 148 Ill. 440; Lawson v. Boyden, 160 Ill. 613; People v. Argo, 237 Ill. 173; People v. O'Brien, 176 N. Y. 253; State v. Gardiner, 92 N. W. 529; Ex Parte Clarke, 37 Pac. 230; Boyd v. U. S., 116 U. S. 616; United States v. James, 60 Fed. 257.

*H. H. Atkinson,* District Attorney, for Respondents:

If the grand jury could have brought in separate indictments, there was nothing to preclude the filing of separate informations. Stats. 1913, c. 209, sec. 1.

The district court has jurisdiction to try petitioner. The crimes and punishments act, under which the prosecution was instituted, and of which section 6640, Revised Laws, is a part, was passed in 1911. Section 570 of the act (Rev. Laws, 6835) provides that the crimes and punishments act shall take effect January 1, 1912. In

1911 the legislature passed an act regarding publication of certain statutes. Stats. 1911, c. 84, sec. 1.

The information is sufficiently specific. The word "cattle" has a well-defined and specific meaning in the State of Nevada. Rev. Laws, 6640; People v. Littlefield, 5 Cal. 355; Walton v. State, 55 S. W. 566; Matthews v. State, 51 S. W. 915; State v. Switzer, 38 Nev. 108.

Petitioner was not compelled to be a witness against himself. His statutory rights were not at any time invaded. He testified voluntarily, according to the provisions of law, and was not compelled by any order of the court to do so. Rev. Laws, 7451.

By the Court, McCARRAN, C. J.:

This is an original proceeding in prohibition. The petitioner, John Esser, was informed against by the district court of Nye County, the information reading as follows:

"That John Esser, on or about the 12th day of March, 1917, * * * did then and there commit the following felony, to wit: That then and there the said John Esser did feloniously steal, take, and carry away nine head of cattle, then and there not the property of the said John Esser, but then and there the property of L. P. Kimball and E. S. Van Dyke, against the peace and dignity of the State of Nevada."

Our statute provides (Rev. Laws, 6640; section 375, Crimes and Punishments Act):

"Every person who shall feloniously steal, take and carry, lead, drive, or entice away any horse, mare, gelding, colt, cow, bull, steer, calf, mule, jack, jenny, or any one or more head of cattle or horses or any sheep, goat, hog, shoat, or pig, not his own property but belonging to some other person; * * * shall be deemed guilty of grand larceny, and upon conviction shall be punished by imprisonment in the state prison for any term not less than one year nor more than fourteen years."

It appears that in the justice court the petitioner and one Joe May had been jointly charged with the crime

of grand larceny, in which charge it was alleged that they did steal, take, and drive away nine head of cattle or more, the same being the property of L. P. Kimball and E. S. Van Dyke. Separate informations were filed against May and Esser in the district court. On the trial of May, the state called the petitioner, Esser, as a witness, and he was interrogated and examined in behalf of the prosecution.

Petitioner contends that this court should interfere by way of prohibition, and rests his contention upon several grounds: First, that the district attorney had no power or authority to file an information in this court against this defendant, for the reason that such information was filed for a purported violation of section 6640 of the Revised Laws of Nevada, the same being a purported act of the legislature of the State of Nevada, whereas they contend this act of the legislature was never approved or passed by the legislature of the State of Nevada. Second, that the said section 6640 of the Revised Laws of Nevada was never passed by the legislature of this state, and, if passed, is in violation of section 17 of article 4 of the constitution of Nevada. It is asserted that this statute was never published as provided by law. Further, it is contended that the information is too indefinite and uncertain, the word "cattle," as used in the information, including quadrupeds of all description, such as horses, mares, cows, steers, sheep, and other animals. Again, it is contended by petitioner that, inasmuch as he was called as a witness by the prosecution against Joe May, he became then and there discharged from the charge against him. It is also contended that the district court had no power or authority to permit the district attorney to file an information in that court until a preliminary trial and hearing or examination had been accorded to the petitioner. By section 4 of chapter 209, Statutes of 1913, it is provided that the information shall be sufficient if it can be understood therefrom:

"That the act or omission charged as the offense is

clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended."

Paragraph 7 of the same section provides that the information shall be sufficient if it can be understood therefrom:

"That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case."

Keeping these provisions in mind, we inquire as to the sufficiency of the information, in view of the fact that the cattle alleged to have been stolen are described in that instrument as "nine head of cattle."

We find that the lexicographers, especially of the old schools, define the word "cattle" as including horses, mares, colts, geldings, and the like, as well as neat animals.

It is said in Louisville & F. R. Co. v. Ballard, 2 Metc. (59 Ky.) 177, that the word "cattle" usually includes horses and sheep; and in Robinson v. State, 1 Tex. App. 311, it is asserted that the term may be taken to include cows, steers, or oxen.

In Newark & S. O. H. C. R. Co. v. Hunt, 50 N. J. Law, 308, 12 Atl. 697, it is said that the word "cattle" includes all domestic quadrupeds, and may be taken as a general term to include horses and mules.

In the case of Decatur Bank v. St. Louis Bank, 21 Wall. (88 U. S.) 294, 22 L. Ed. 560, the court intimated that in a limited sense the word "cattle" might be used to designate the different variety of horned animals. In that case, however, the court found that the term was frequently used with a broader signification as embracing animals in general which serve as food for man.

In the case of United States v. Schmoll (C. C.) 154 Fed. 734, the court referred to a former decision in the case of Rossbach v. United States (C. C.) 116 Fed. 781, and there held that the term "hides of cattle" as used in

the tariff act might include the hides of domesticated animals of the bovine species. The court held that by the term "cattle" it was to be understood as referring to domesticated bovine animals, as oxen, cows, bulls, and calves, or live stock, or it might refer to domesticated quadrupeds which serve for tillage and other labor or food for man. However, the court held that in a more popular sense the term "cattle," as that term is used in the United States, is understood as being restricted in meaning, and more especially applying to the group of so-called straight-backed cattle, such as cows, oxen, steers, and bulls.

1-3. The term "bovine" is taken from the Latin "bos," which means cow or bull. "Neat cattle" are animals belonging to the genus bos, and the term does not embrace horses, sheep, goats, or swine. The term "cattle," as used in our statute, undoubtedly means neat cattle. The term "cattle," as that expression is generally used in Western America, or at least in the Western States of the Union, by its common acceptation means neat cattle, straight-backed, domesticated animals of the bovine genus, regardless of sex. It is not generally taken to mean calves or animals younger than yearlings. It may, however, be sufficiently broad in its acceptation to include such. McIntosh v. State, 18 Tex. App. 285. It does, however, embrace and include cows, bulls, and steers. It is not a term which in its common acceptation embraces horses, mares, geldings, colts, mules, jacks, or jennies, nor does it embrace such as goats, hogs, sheep, shoats, or pigs. By the term "cattle," as used in section 6640, it must be inferred that the legislature intended such to apply generally to cows, bulls, and steers of the domesticated bovine genus. It would, in our judgment, be folly to say, in view of the common use of the term "cattle" in this western country, that a person of common understanding would not know what is intended by that expression; and the specific use of the term in the statute makes it proper for the pleader in an information or indictment to allege the larceny in such terms

with the proper enumeration.    Matthews v. State, 39 Tex. Cr. R. 553, 47 S. W. 647, 48 S. W. 189.

This same question was dealt with by the Supreme Court of California in the case of People v. Littlefield, 5 Cal. 355.    There the indictment alleged the larceny of "three head of cattle."    The court sustained the indictment in its use of these terms, holding that the defendant could not be prejudiced in his case by language of this character, and that such language was to be construed according to the common acceptation of the term.

We are referred to the case of State v. Brookhouse, 10 Wash. 87, 38 Pac. 862, where the identical term was dealt with by the supreme court of that state.    We refuse to follow the decision in that case, as do we also refuse to follow the assertion of Mr. Bishop in his work on Statutory Crimes.    Our refusal in this respect is based on what we believe to be the general, common, ordinary, and in fact universal, acceptation of the term "cattle" as such term is used in the Western States.

In the case of Matthews v. State, 39 Tex. Cr. R. 553, 47 S. W. 647, 48 S. W. 189, the Supreme Court of Texas, in general terms, held that an indictment charging the taking of "one head of cattle" was sufficient to put the defendant on trial, relying on the rule that a general description of stolen property is sufficient.

In the case of Matthews v. State, 41 Tex. Cr. R. 98, 51 S. W. 915, the Court of Criminal Appeals of Texas again dealt with the identical question and reaffirmed its decision in Matthews v. State, 39 Tex. Cr. R. 553, 47 S. W. 647, 48 S. W. 189.

In State v. Dewitt, 152 Mo. 84, 53 S. W. 429, it was held that an indictment charging the taking of "two head of neat cattle" was sufficient, being the language of the statute.    The court approved the expression of Kelley on Criminal Law and Practice, sec. 647, when in dealing with the question he said:

"If the animal, as described in the indictment, falls within any of the terms employed in the statute, it will be sufficient, although it might have been better

described by some other name, especially where the statutory word is a generic term."

In Territory v. Christman, 9 N. M. 582, 58 Pac. 343, the indictment alleged "one neat cattle," the same being the language of the statute. It was held sufficient, inasmuch as it was regarded as a comprehensive term.

In the case of Walton v. State, 41 Tex. Cr. R. 454, 55 S. W. 566, the Court of Criminal Appeals of Texas, having before it an indictment wherein the description of the property stolen was "twenty head of cattle," held that the indictment was sufficient, and referred to its decision in Coward v. State, 24 Tex. App. 590, 7 S. W. 332. To the same effect are the cases of State v. Crow, 107 Mo. 341, 17 S. W. 745, Castello v. State, 36 Tex. 324, and Hubotter v. State, 32 Tex. 479.

As to the contention of petitioner that section 375 of the crimes and punishments act under which information is instituted was never passed by the legislature of the state, and was never published as provided by law, it will suffice to say that section 375 is a part of an act entitled "An act concerning crimes and punishments and repealing certain acts relating thereto." It was passed by both houses of the legislature of 1911, and approved by the governor March 17, 1911. It became effective, by legislative declaration, January 1, 1912. As to the publication of the statute, we think it may conclude the question to say that the legislature of 1911, looking to the publication of this statute, as well as others, passed an act which was approved March 18, 1911, and which in part reads as follows:

"All acts passed at the present session of the legislature which do not take effect or come into force until after the year nineteen hundred and eleven shall not be published in the regular session laws of the year nineteen hundred and eleven, but shall be included in the new compilation of the laws of the state to be published this year under the supervision of the code commission." Stats. 1911, p. 100.

4. This court will take judicial cognizance of the publication of the Revised Laws of the state, compiled and

published under the supervision of the code commission, in which the crimes and punishments act just referred to appears and is published in its entirety.

As to the contention of petitioner bearing on the act of the prosecution in calling him as a witness at the trial of May, nothing is disclosed which would intimate that petitioner was other than a voluntary witness on that occasion. Rev. Laws, 7451, provides:

"* * * In all cases when two or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness against another, in relation to such crime or misdemeanor, but the testimony given by such witness shall in no instance be used against himself in any criminal prosecution except upon a charge of perjury committed in the giving of such testimony; and any person may be compelled to testify, as provided in this section."

5, 6. Petitioner might with propriety have refused to testify at the trial of May, basing his refusal on his own incrimination, but we are aware of no rule that would prohibit the petitioner from voluntarily testifying either in behalf of the prosecution or of the defendant. The fact that he was called by the prosecuting attorney did not, as we view it, take from the voluntary nature of his act. Moreover, the statute throws about him ample protection when it provides that his testimony "shall in no instance be used against him in any criminal prosecution except upon a charge of perjury committed in the giving of such testimony."

We are referred by petitioner to many cases asserted in support of his contention and particularly the case of Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110. In that case the witness Counselman refused to answer questions, basing his refusal on the ground that his answers might tend to incriminate himself. The court before whom he was called as a witness adjudged him to be in contempt and made an order fining him $500 and the costs of the proceeding, and directed the marshal to take him into custody and hold

him until he should have answered the questions and all questions of similar import which should be propounded to him by the grand jury or the district attorney or any assistant district attorney in the presence of such jury. His release on habeas corpus was based on his right to refuse to answer questions which the supreme court found might tend to his own incrimination. No such refusal was made by petitioner here at the time of his testifying in the court below. Nothing appears in the record which would lead us to believe that the testimony of the petitioner at the trial of May was other than voluntary.

To the contention of petitioner that he was denied the right of preliminary hearing before the filing of the information, we may observe that the petition filed in this court, setting forth the history of the proceedings, shows the complaint filed in the justice court of Beatty township, in which petitioner and Joseph May are jointly charged with the offense of taking nine head of cattle. The petition also alleges a hearing by the justice of the peace of Beatty township, at which hearing evidence was presented to the justice upon the joint charge made against petitioner and Joseph May; and at the conclusion of such hearing it appears that the justice of the peace entered an order and judgment holding the petitioner and Joseph May to answer to the district court of the Fifth judicial district. It was subsequent to this order and judgment that separate informations were filed against the petitioner and May, charging each with the felonious taking of nine head of cattle.

7-9. We find no error or irregularity in the proceedings in this respect. Had the grand jury of Nye County investigated the charge against petitioner and his codefendant May after the preliminary examination held in the justice court of Beatty township, separate indictments might have been filed against the parties; or had they been jointly indicted, either or both might, under the statute, have demanded separate trials, and such

demand the court would have been required to recognize and grant. Petitioner here was deprived of no substantial right by the filing of a separate information after a preliminary examination, although in that preliminary examination he was jointly charged with another in the commission of an offense.

The writ should be denied, and the proceedings dismissed.

It is so ordered. _____