(93 South. 529)

NOLAN v. STATE.   (8 Div. 409.)

(Supreme Court of Alabama.   June 22, 1922.)

**I. Homicide** ⬅➡203(I), 214(3)—**Dying declarations relevant to killing admissible when deceased knows or thinks he is in dying state.**

Dying declarations are admissible when the death of deceased is the subject of the charge, and when the declarations are material circumstances relating to the cause of his death, and when he knows or thinks he is in a dying state.

**2. Homicide** ⬅➡214(3)—**Admitting testimony as to dying declarations of deceased held not error.**

In a prosecution for homicide where there was proof that before deceased made dying declarations he stated he knew or thought he would die from the wound, his statements that he was shot by defendant "through a joke" *held* admissible.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Ante, p. 376.

**3. Criminal law ☞366(3)—Statement by deceased before difficulty arose held admissible as res gestæ.**

Where in a murder prosecution a dying declaration of deceased that "there was no woman connected with it" was introduced in evidence, a statement by deceased before the difficulty arose: "You need not go to where your wife is. I have just been over there to see her, and she is not at the house. She is out in the woods with another man"—was admissible as part of the res gestæ.

**4. Witnesses ☞268(1), 319—Wide latitude allowed in cross-examination, but impeachment as to an irrelevant matter not proper.**

Wide latitude is permitted on cross-examination, but the presiding judge must not permit the defendant, over his objection, to be cross-examined about a collateral matter irrelevant to the issue for the purpose of impeaching him, and then permit him, over his objection, to be impeached on this immaterial collateral matter.

**5. Criminal law ☞338(1)—Age of parties to difficulty held relevant.**

The age of parties in a difficulty is relevant to show their relative conditions at the time.

**6. Witnesses ☞383'—Impeachment of defendant who denied making inconsistent statement as to collateral matter held error.**

Where defendant in a murder prosecution stated that he was 19 years old, and denied on cross-examination that he swore he was over 21 years of age when obtaining a license to marry, the introduction of the affidavit and testimony by the clerk and judge of the probate court for the purpose of impeaching him was error.

Appeal from Circuit Court, Franklin County; C. P. Almon, Judge.

Ed Nolan was convicted of murder in the first degree, and he appeals. Reversed and remanded.

Brief of counsel for appellant did not reach the Reporter.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Self-serving declarations, unless a part of the res gestæ, cannot be admitted as testimony in favor of defendant. 4 Mich. Ala. Dig. 182. On cross-examination, a wide latitude is allowed, resting in the discretion of the court. 12 Mich. Ala. Dig. 1212; 14 Mich. Ala. Dig. 1148. It is permissible to lay a foundation for proof of inconsistent or contradictory statements, and after laying the proper predicate to show such statements for the purpose of impeaching a witness. 12 Mich. Ala. Dig. 1304.

MILLER, J. Ed Nolan was indicted for the offense of murder in the first degree. The indictment charged him with killing John King by shooting him with a pistol.

He was convicted of murder in the first degree by the jury, and they fixed his punishment at imprisonment in the penitentiary for life.

The defendant shot John King twice in a pool room about 4 o'clock p. m. on August 30, 1921, under circumstances indicating murder, according to the evidence of the state, and from the wounds he died about 5 o'clock the next morning.

[1] Dying declarations of the decedent are admissible when the death of the deceased is the subject of the charge, and when the declarations by him are material circumstances relating to the cause of his death, and when the deceased knows or thinks he is in a dying state. Greer v. State, 156 Ala. 15, 47 South. 300; Johnson v. State, 47 Ala. 9.

[2] Several witnesses for the state testified as to the dying declarations made by the deceased. In this the court did not err. There was proof before deceased made the statements that he stated he knew or thought he would die from the wound, and that he was in extremis at the time the declarations were made. The court permitted them to give the statements of the deceased, and the substance of what he said as narrated by them is as follows: One witness said: "I asked him why this man shot him, and he said they were joking, and he shot him for nothing. * * * He said he was shot through a joke." Another witness testified, deceased said: "Ed Nolan shot him, and it was through a joke." Another state witness testified: "He said he did not know why he shot him; he thought he was the best friend he had; and there was no woman connected with it."

[3] The evidence for the defendant tended to show that he acted in self-defense. At the time of the fatal difficulty, as defendant walked into the pool room according to defendant's testimony deceased said to him, "Son, she is still out." Then deceased, when he said that, "put his hand in his overall bib, and whenever he said that he was looking at me and started up that way and then is when I shot him; he appeared to be mad; he was looking at me." Under the evidence of the state, about three hours, and under the evidence of the defendant, about an hour, before the fatal difficulty, there had been some words between the parties. The evidence of the defendant and his witnesses indicated that deceased threatened the defendant. The defendant testified, and he was corroborated by others, that deceased said to him "that he had been trying to get a chance to beat hell out of defendant for a year, and if I [defendant] didn't like what he said to follow him around to the back and he would give it to me, and if I wouldn't follow him for me to go and he would follow me, and if I was scared of him in that way

to get a pistol or two and a cue stick and come out there and he would take them away from me, and stamp hell out of me on the sidewalk." The defendant offered to testify himself, and to prove by others, that in that connection and at the same time in the same conversation the deceased said to him, "You need not go to Mr. Moles', where your wife is. I have just been over there to see her myself, and she is not at the house. She is out in the woods with another man." The court would not permit this to go to the jury. It contradicted the dying declarations of decedent offered by the state that "there was no woman connected with it." The dying declaration stated he was shot "through a joke." This evidence may explain what deceased considered as the joke. This evidence tends to explain the statement of deceased to defendant at the time of the fatal difficulty, "Son, she is still out." It was competent evidence under the circumstances. It shed real light on the res gestæ statement of the deceased. It was accompanied with threats. The deceased by his dying declarations stated there was no woman connected with it. The state presented that issue. This made it competent for defendant by his witnesses to show there was a woman connected with it from the words of the deceased, when they were used by him as part of the res gestæ, and also when they were used by him direct to the defendant in connection with and accompanied by a threat against the defendant. The defendant could lay no predicate for it, as there was no opportunity to cross-examine him. These words give in full the details and nature of the threats made by the deceased; they were accompanied by threats; they do not give the details or merits of the former quarrel or difficulty; and the court erred in not allowing that testimony to go to the jury. Watts v. State, 177 Ala. 24, 59 South. 270, headnote 8; Gunter v. State, 111 Ala. 23, 20 South. 632, 56 Am. St. Rep. 17.

[4-6] On cross-examination of defendant by state he said he was 19 years old on October 11, 1921. He knew Judge A. W. Hargett. A paper was shown him, and he said he did not know whether he wrote his name there or not. "I did not make affidavit before Judge Hargett on October 23, 1920, that I was over 21 years of age." The judge of probate and his clerk were permitted by the court to impeach the witness by testifying that he made the affidavit that he was 21 years old in October, 1920, to secure license to marry, and the affidavit was introduced in evidence. The defendant objected to all of this evidence, except to that part that he was 19 years old on October 11, 1921. His objections to every part of it were overruled by the court, and exceptions were duly reserved by him.

"Much latitude must be allowed on cross-examination, and much must be intrusted to the enlightened discretion of the presiding judge." Burger v. State, 83 Ala. 36, 3 South. 319. But the presiding judge must not permit the defendant, over his objection, to be cross-examined about a collateral matter, irrelevant to the issue, for the purpose of impeaching him, and then permit the defendant over his objection to be impeached on this immaterial collateral matter. Washington v. State, 63 Ala. 189; Rosenbaum v. State, 33 Ala. 354; Bivens v. Brown, 37 Ala. 422; Marx v. Bell, 48 Ala. 497.

The age of parties in a difficulty is relevant to show their relative conditions at the time. Gunter v. State, 111 Ala. 23, 20 South. 632, 56 Am. St. Rep. 17. The defendant admitted he was 19 years old. He was presumed to be responsible for his acts; and no evidence was offered and no plea was introduced as to his irresponsibility. Code 1907, § 7175. Whether he made affidavit to secure marriage license in 1920 that he was 21 years old was a collateral matter, and irrelevant to any issue in the case. It did not tend to prove his guilt or innocence of the charge in the indictment. The court may have permitted the questions on cross-examination as to his statements to the probate judge as to his age to arrive at his proximate age to test his memory and accuracy; but it was highly improper for the court to permit it for the purpose of impeaching the defendant. He was over the age of responsibility, and it was immaterial to the issue whether he was exactly 19 or 21. Permitting the judge of probate, the highest official of the county, and his clerk to impeach the witness on this collateral matter, and permitting the state to prove by them the contents and execution of the affidavit by defendant, were manifestly erroneous. It brought this irrelevant, collateral matter into undue, unnecessary, and improper prominence in the case, to the prejudice of the defendant. Washington v. State, 63 Ala. 189; Rosenbaum v. State, 33 Ala. 354.

There are many other exceptions reserved by the defendant. A detailed treatment of them we think unnecessary, because, if they arise on another trial, they will be, no doubt, in different form.

For the errors mentioned, the judgment of conviction must be reversed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.