194 So. 677

### SEALS v. STATE.
### 8 Div. 825.

Court of Appeals of Alabama.
June 30, 1939.

Rehearing Denied Oct. 9, 1939.

Reversed After Remandment Jan. 30, 1940.

A. H. Carmichael, of Tuscumbia, for appellant.

Thos. S. Lawson, Atty. Gen., and Wm. H. Loeb and Silas C. Garrett, III, Asst. Attys. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment in this case charged that this appellant, and several others, not on trial, "feloniously took and carried away 28 head of cattle of the value of $1400.00 the personal property of E. D. Fennell and Leonard Pruitt."

The defendant demurred to said indictment, and assigned the following grounds:

"1. Said indictment charges no offense known to the law.

"2. Said indictment is vague, indefinite and uncertain in its averments.

"3. Said indictment attempts to charge Larceny of '28 head of cattle' which is an insufficient description of the alleged stolen property.

"4. Said indictment fails to sufficiently charge the defendant with larceny or of having receiving, concealing or aiding in concealing any specific property.

"5. Said indictment by its allegation fails to put defendants on notice of the offense with which they are charged.

"6. Said indictment under its allegations is so faulty and indefinite as that the defendant could be at some future time indicted for the larceny of the same property that is illegally and insufficiently described in this indictment.

"7. Said indictment fails to charge the kind, species or character of cattle, alleged to have been stolen.

"8. The said indictment fails to allege the quantity of cattle which was stolen

from Fennell and a quantity or number stolen from Pruitt.

"9. The said indictment fails to allege the number, kind, species or character of cattle belonging to Fennell and the number, kind species or character of cattle belonging to Pruitt. All of which are alleged to have been stolen or concealed by these defendants.

"10. Said indictment fails to allege that Pruitt and Fennell are a legal entity or if they are separate parties owning separate kinds, character or species of cattle."

The court overruled the demurrer to the indictment and exception was duly reserved.

We are of the opinion that error prevailed in the foregoing ruling. The several grounds of demurrer going to the insufficiency in the description of the alleged stolen property are well taken and are sustained. The term "cattle," without further description, will not suffice, and, as here used, rendered the indictment vague, uncertain and ambiguous, and insufficient as a basis upon which a judgment of conviction may be rested.

An indictment must state the facts constituting the offense in such a manner as to enable the accused to know, with certainty, what is intended; and, the constitution, § 6, provides that a person charged with the commission of crime has the right to demand the nature and cause of the accusation against him. This right requires that the offense must be set out with clearness and all necessary certainty to apprise the accused of the crime of which he stands charged.

"Cattle," as defined in 1 Bouv.Law Dict., Rawles Third Revision, page 432, is, "A collective name for domestic quadrupeds generally, including not only the bovine tribe, but horses, asses, mules, sheep, goats, and swine."

Black's Law Dictionary defines "Cattle": "A term which includes the domestic animals generally; all the animals used by man for labor or food." "Animals of the bovine genus. In a wider sense, all domestic animals used by man for labor or food, including sheep and hogs."

In Vol. 2, Words and Phrases, First Series, page 1005, we find: "'Cattle' means live stock; domestic quadrupeds which serve for tillage or other labor, or as food for man." Also, "In the construction of statutes, 'cattle' includes horse, mule, ass, sheep, hog, or goat, of any age or sex, bull, cow, calf, and ox." In same Vol. 2, Words and Phrases, First Series, page 1005: "The word 'cattle' may be either singular or plural in number, so that the use of the term 'cattle' may mean one cattle. In its sense of 'live stock,' domestic quadrupeds which serve for tillage or other labor, or as food for man, includes a number of different kinds of live stock."

In 11 Corpus Juris, p. 33, we find the following: "Cattle. Cattle is a generic term and may embrace a number of animals and different kinds of stock, as, beasts of pasture not wild nor domesticated; kine, horses, and some other animals appropriated to the use of man; domestic quadrupeds collectively, especially those of the bovine genus, sometimes also including sheep, goats, horses, mules, asses, and swine; a collective name for domestic quadrupeds, including the bovine tribe, also horses, asses, mules, sheep, goats, and swine, but especially applied to bulls, oxen, cows, and their young; live stock; domesticated quadrupeds which serve for tillage or other labor or as food for man."

The case of State v. Brookhouse, 10 Wash. 87, 38 P. 862, is in all respects identical with the case at bar upon the proposition under discussion. In the Brookhouse case, supra, the Supreme Court of Washington said: "The prosecution of the appellant was based upon an information containing the following charge: 'The said John Brookhouse, at the county and state aforesaid, on, to wit, the 28th day of June, 1893, did then and there feloniously take, steal, drive or lead away, twenty-five head of cattle, being then and there the property of E. D. Nash, and being then and there of the value of seven hundred dollars.' The theory of the state was that this was a charge of grand larceny, under Pen.Code, § 48, and the jury was so instructed by the court. * * * The information was defective because the property alleged to have been taken was described only as 'cattle.' The term 'cattle' in law includes all of the domestic animals mentioned in Pen.Code, § 52, so that the information would have been sustained by proof of the taking of 25 horses as well as by showing that the 'cattle' were that number of 'steers.'"

As stated, the law requires that an indictment shall be so certain as to the party against whom the offense was committed, as to enable the prisoner to under-

stand who the party is; and upon which charge he is called upon to answer, so as to prevent the prisoner from being put in jeopardy a second time for the same offense. A general description of the alleged stolen property like that here presented in the indictment would not with any degree of certainty inform the accused what was intended, nor could it operate in any manner to the benefit of the accused, so as to prevent the prisoner from being put in jeopardy a second time for the same offense.

The demurrer pointed out specifically the fatal defects here discussed, and, as stated, the court fell into error in not sustaining the demurrer and quashing the indictment.

Upon this appeal there are innumerable other insistences of error, many of which appear to be well taken. However, from what has been said, a judgment of conviction cannot be rested upon the indictment in this case. This is conclusive of the appeal, hence there appears no necessity of discussing other questions presented on this appeal.

As there can be no conviction under this void indictment, the judgment of the lower court is reversed, and one here entered discharging the defendant from further custody in this proceeding.

Reversed and rendered.

### After Remandment.

Upon former consideration of this appeal, our discussion and decision, was confined solely to the action of the trial court in ruling on demurrer to the indictment. This court was of the opinion error prevailed in overruling the demurrers and that the indictment was subject thereto. Our discussion and reasons are fully stated in the original opinion, supra.

█ Upon certiorari to the Supreme Court, 194 So. 682,[1] the writ was granted, a majority of said court holding the indictment was sufficient, and not subject to demurrer. Under the provisions of section 7318 of the Code 1923, the decision of the Supreme Court must prevail, and this court's holdings and decision must conform thereto. Pursuant to said statute we perforce modify our former opinion, and decision, to accord to that of the Supreme Court. This has the effect of vacating and holding for naught the order of this court discharging the defendant from further custody.

We now advert to other insistences of error presented upon this appeal.

In our former opinion this court said: "Upon this appeal there are innumerable other insistences of error, many of which appear to be well taken," etc.

The record discloses the trial court's ruling was invoked nearly 150 times during the progress of this case. In every instance the rulings of the court were adverse to defendant, and all these questions are insisted upon to reverse the judgment of conviction from which this appeal was taken.

The exceptions taken, relate in the main, to the restriction and undue abridgement of the right of the accused, to cross-examine the witnesses who appeared and testified against him. A large number of said exceptions appear to be well taken, hence must be sustained.

█ The Constitution of Alabama 1901, Art. 1 Sec. 6. provides that the accused in criminal prosecutions has the right "to be confronted by the witnesses against him," and necessarily such right imports the constitutional privilege to cross-examine the opposing witnesses. The constitutional right of accused to be confronted by witnesses would lose half its value if the kindred right of cross-examination were denied him. Tate v. State, 86 Ala. 33, 5 So. 575. In Amos v. State, 96 Ala. 120, 11 So. 424, 426, it was said: "Witness may be questioned on cross-examination, not only on the subject of inquiry, but upon any other subject, however remote, for the purpose of testing his character for credibility, his memory, his means of knowledge, or his accuracy." Section 7731, Code 1923, provides, "the right of cross-examination *thorough and sifting*, belongs to every party as to the witnesses called against him," and, by innumerable decisions of the appellate courts of this State, it has been held that "Wide latitude is permitted on cross-examination." We here cite a few authorities in this connection. Nolan v. State, 207 Ala. 663, 93 So. 529; Wray v. State, 154 Ala. 36, 45 So. 697, 15 L.R.A.,N. S., 493, 129 Am.St.Rep. 18, 16 Ann.Cas. 362; Hood v. State, 18 Ala.App. 287, 92 So. 30; Hodge v. State, 18 Ala.App. 361, 92 So. 79; Dossett v. State, 19 Ala.App.

---

[1] 239 Ala. 5.

158

*496, 98 So. 359; Harbin v. State, 19 Ala. App. 623, 99 So. 740.*

The indictment, as stated, charged this appellant and several others, simply with the larceny of "28 head of cattle."

 The first State witness, Leonard Pruitt, testified that in October 1937, he and Ed Fennell had some cattle stolen from them. That said cattle were located in a pasture which belonged to him (witness) and Mr. Ed Fennell, and that the stolen cattle consisted mainly of steers. On the direct examination of the witness no other testimony as to the description of the alleged stolen cattle was adduced. Upon cross-examination, the defendant undertook, by every conceivable means, and in every possible manner, to have this witness one of the alleged injured parties, describe the kind and character of the alleged stolen cattle, as to sex, color, size, age, etc., but in every instance the State interposed objection, and as above stated, every objection thus interposed was sustained by the court, resulting therefore in the denial to the defendant of his constitutional and statutory right to be informed of the nature and specific cause of the accusation upon which he is required to defend, for it cannot be denied that it is necessary to the end of justice that the party accused should be fully apprised of the nature and identity of the offense for which he is called to answer. By such means only could he be protected from a subsequent prosecution for the same offense. The object of such rule of evidence is to enable every person, against whom a criminal prosecution is instituted, to defend himself against it.

It is elementary, on cross-examination, that greater latitude should be allowed by the court. And, as stated, in the case of Wilson v. State, 195 Ala. 675, 71 So. 115, 117: "And while the right to cross-examination may be afforded the defendant, yet if it is so circumscribed and limited as to strip it of its benefit, the right 'loses its substance and becomes a shadow.' Sustaining an objection to a proper question on cross-examination is * * * error." Under the above cited authorities, and also under the elementary rules of evidence, the defendant should have been allowed to cross-examine witness Pruitt as to his blanket statement on the occasion complained of that "the stolen cattle consisted mainly of steers." The numerous questions propounded to this witness, on cross-examination, sought to adduce relevant and very material testimony. His denial of the right to do so was error highly prejudicial to his substantial rights. In Amos v. State, supra, the Supreme Court said: "While it is often the case that the relevancy of any particular question, considered without reference to the other facts and circumstances of the case, could not be perceived, still it is equally true that if such questions are not allowed on cross-examination the ends of justice would often be thwarted."

On further examination of witness Pruitt numerous other questions, pertaining to the locus in quo, were not allowed and adverse rulings of the court were had in this connection over the strenuous insistences and exceptions of defendant. What has been said above applies also to these several rulings.

 As stated, the indictment charged that the offense complained of was committed jointly by this appellant and seven other persons among whom was Paul Rowe. Pending the trial several witnesses for the State testified to facts tending to show that defendant Rowe was the principal actor in the commission of the offense, and that he and others came to the place, where the alleged larceny was said to have been committed on the night in question. That Rowe's trucks hauled the cattle away and that he was the principal movant in the commission of the crime, and that he had conspired with others to steal the cows. This man, Paul Rowe, was examined by the defendant as a witness, and amongst other things he was asked by defendant's counsel, "You did not steal these cattle did you?" To this question the Solicitor interposed objection which was sustained, as was the following question: "Did you ever conspire with anybody to help them steal the cows?" The court also sustained objection to this question. These rulings were error. The mere fact that the witness had already in different language denied connection with the larceny complained of, would not justify the court in holding that he should not be allowed to give reply to these direct questions in refutation of the testimony adduced by the State.

 Several State's witnesses testified relative to the arrest and confinement in jail of this appellant, the time, etc. of his arrest and as to their numerous visits to defendant while in jail, and as to who put him in jail. By the adverse rulings of the court the defendant who testified as a wit-

ness in his own behalf was denied the privilege to give his version of all this in refutation or contradiction. Such questions as (1) "Who put you in jail?" (2) "How long did you stay in jail?" (3) "When did you come to the jail in Tuscumbia?" (4) "What day did you go to the Tuscumbia jail?" (5) "Did you see anyone in jail down here?" etc. Upon objection to each of said questions, by the State, the defendant was not allowed to answer. These rulings were likewise error.

There were numerous other rulings of the court pending the taking of testimony infested with error. We refrain from further discussion in this connection as not being necessary.

Appellant complains at the remarks of the trial judge, and reserved exception thereto at the commencement of the trial wherein, as shown by the record, the court stated: "You have got too many witnesses, and are taking up too much time." We refrain from discussing the foregoing exception other than to quote as being pertinent to such question the following excerpt from the opinion in the case of Yeldell v. State, 100 Ala. 26, 29, 14 So. 570, 571, 46 Am.St.Rep. 20; wherein the Supreme Court said: "Courts are established for the administration and promotion of justice. If time and patience are not accorded a defendant, proceeded against in a cause in which his life or liberty is endangered, this high end and aim of the court, would be subverted. If time is valuable and is pressing, if patience has been sorely taxed, any just judge will be careful, yet, to allow full and fair opportunity to counsel to present his client's defense. This much is guarantied in the constitution."

The judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.

